Paul D. Scott, Esq. (SBN 145975)
pdscott@lopds.com
Lani Anne Remick, Esq. (SBN 189889)
laremick@lopds.com
LAW OFFICES OF PAUL D. SCOTT, P.C.
435 Pacific Avenue, Suite 200
San Francisco, California 94133
Tel: (415) 981-1212
Fax: (415) 981-1215

Attorneys for Relator Michael Franchek

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES *ex rel.* MICHAEL FRANCHEK and STATE OF CALIFORNIA, *et al. ex rel.* MICHAEL FRANCHEK,<br><br>          Plaintiffs,<br><br>v.<br><br>WORKRITE ERGONOMICS, LLC and KNAPE & VOGT MANUFACTURING COMPANY,<br><br>          Defendants.<br>_____ | No.  4:16-cv-02789-JSW<br><br>**MOTION FOR ATTORNEYS' FEES, EXPENSES AND COSTS UNDER THE FEDERAL AND CALIFORNIA FALSE CLAIMS ACTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Hearing Date:   January 21, 2022<br>Time:               9:00 a.m.<br><br><br>Filed Herewith:  Declarations of Eric Havian, Thomas B. Mayhew, Paul D. Scott and Lani Anne Remick in Support of Motion for Attorneys' Fees; Proposed Order |

# TABLE OF CONTENTS

I.    INTRODUCTION.............................................................................................. 1

II.   BACKGROUND ............................................................................................... 2

  A.    The False Claims Act complaint and investigation ...................................... 2

  B.    The settlements ............................................................................................ 5

  C.    Counsel's work on the case .......................................................................... 6

  D.    Post-settlement proceedings regarding fees ................................................ 6

III.  ARGUMENT ................................................................................................... 8

  A.    Relator's lodestar is presumptively reasonable. .......................................... 8

    1.    The requested hourly rate is reasonable....................................................... 9

     a.    Declarations of relator's counsel ................................................................ 9

      i.    Counsel's skill and experience ................................................................ 9

      ii.   Counsel's customary rates ...................................................................... 10

     b.    Declarations of other Northern District attorneys re: counsel's skill and
experience and rates for similar work in this District ............................... 10

     c.    Rate determinations in other Northern District cases .......................... 11

      i.    *Qui tam* cases are complex civil litigation................................................. 11

      ii.   Decisions by Courts in the Northern District awarding similar rates for
complex litigation by attorneys with comparable levels of experience ..................... 13

     d.    Defense counsel's rates in this matter ...................................................... 15

    2.    There is no basis for Defendants' suggested hourly rates for relator's counsel. 16

    3.    Counsel's hours spent on this case are reasonable. ..................................... 17

     a.    Counsel's time is accurately documented with time records and declarations of
counsel. ..................................................................................................... 17

     b.    Counsel have exercised billing judgment. ................................................ 18

    4.    Defendants have not met their burden of challenging counsel's hours. .............. 18

     a.    Hours incurred after Governments began investigating ........................... 18

     b.    Hours prior to being formally retained by client....................................... 19

i

c.    Time spent on Complaint.................................................................20

d.    "Clerical" tasks.....................................................................................21

e.    "Block billing"......................................................................................23

B.    To reflect the marketplace, a modest lodestar enhancement is appropriate. ...... 23

C.    Relator's counsel is entitled to "fees on fees." ......................................... 25

IV.    CONCLUSION ...............................................................................................25

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

# TABLE OF AUTHORITIES

## Cases

*DL v. District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019) ...................................................... 10

*Armstrong v. Davis*, 318 F.3d 965 (9th Cir. 2003) .................................................................. 17

*Barjon v. Dalton*, 132 F.3d 496 (9th Cir.1997 ...................................................................... 9

*Bell v. Clackamas County*, 341 F.3d 858 (9th Cir. 2003) ......................................................... 9

*Brinker v. Normandin's*, No. 14-cv-03007-EJD, 2017 WL 713554 (N.D. Cal. Feb. 23, 2017)... 15

*Californians for Disability Rights v. Cal. DOT*, 2010 U.S. Dist. LEXIS 141030 (N.D. Cal.

  December 13, 2010) ............................................................................................................ 22

*Camacho v. Bridgeport Financial, Inc.*, 523 F. 3d 973 (9th Cir. 2008) ...................................... 9

*Carlotti v. ASUS Comput. Int'l*, Case No. 18-cv-03369-DMR,2020 WL 3414653 (N.D. Cal. Jun.

  22, 2020) ........................................................................................................................... 14

*Chabner v. United of Omaha Life Ins. Co.*, No. C–95–0447 MHP, 1999 WL 33227443 (N.D. Cal.

  Oct. 12, 1999) .................................................................................................................... 25

*Charlebois v. Angels Baseball, L.P.*, 993 F. Supp. 2d 1109 (C.D. Cal. 2012) ........................... 21

*Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) .............................. 25

*Davis v. Prison Health Servs.*, No. C 09–2629 SI, 2012 WL 4462520 (N.D. Cal. September 12,

  2012) ................................................................................................................................ 25

*Dragu v. Motion Picture Indus. Health Plan*, 159 F. Supp. 3d 1121 (N.D. Cal. 2016) .............. 23

*Edgerton v. State Personnel Board*, 83 Cal.App.4th 1350 (2000) ........................................... 25

*Elder v. Nat'l Conference of Bar Examiners*, No. C 11–00199 SI, 2011 WL 4079623 (N.D. Cal.

  September 12, 2011) ........................................................................................................... 21

*Evon v. Law Offices of Sidney Mickell*,  688 F.3d 1015 (9th Cir. 2012) .................................... 24

*Fitzhenry-Russell v. Coca-Cola Co.*, Case No. 17-cv-603-EJD, 17 2019 WL 11557486 (N.D.

  Cal. Oct. 3, 2019) ............................................................................................................... 14

*Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 120 (2019) ........................................................ 12

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

*Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07–05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ................................................................................................................................. 24

*Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07–05923 WHA, 2015 WL 2438274 (N.D. Cal. May 25, 2015) ................................................................................................................................. 15

*Hasbrouck v. Texaco, Inc.*, 879 F.2d 632 (9th Cir. 1989) ................................................ 17

*Hensley v Eckerhart*, 461 U.S. 424, 103 S Ct 1933 (1983) ............................................. 17

*In re Cathode Tube Antitrust Litigation*, Master File No. 3:07-cv-5944 JST, 2016 WL 721680 (N.D. Cal. February 29, 2016) ................................................................................. 14

*In re Wells Fargo & Company Shareholder Derivative Litigation*, 445 F.Supp.3d 508 (2020) .. 14

*Johnson v. Shobeiri*, No. 18-cv-04816-VKD, 2019 WL 5458106 (N.D. Cal. October 24, 2019) 21

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) .......................................................... 8, 24

*Kumar v. Salov N. Am. Corp.*, Case No. 14-cv-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017) ................................................................................................................................. 14

*Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203 (N.D. Cal. 2010) .................................. 14

*MacDonald v. Ford Motor Co.*, No. 13-cv-02988-JST, 2016 WL 3055643 (N.D. Cal. May 31, 2016) ................................................................................................................................. 20

*McGrath v. County of Nevada*, 67 F.3d 248 (9th Cir. 1995) ............................................ 18

*Missouri v Jenkins*, 491 U.S. 274, 109 S. Ct. 2463 (1989) ......................................... 9, 23

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) ......................................... 8, 23

*Moralez v. Whole Foods Mkt., Inc.*, No. C 12–01072 CRB, 2013 WL 3967639 (N.D. Cal. July 31, 2013) ............................................................................................................................ 22

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) .................................... 17, 21

*Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009) .................................................. 9

*Oberfelder v. City of Petaluma*, No. C–98–1470 MHP, 2002 WL 472308 at (N.D. Cal. Jan. 29, 2002), *aff'd sub nom Oberfelder v. Bertoli*, 67 Fed. Appx 408 (9th Cir. 2003) ...................... 23

*Perdue v. Kenny A.*, 559 U.S. 542, 130 S. Ct. 1662 (2010) ............................................ 24

*Perez v. Rash Curtis & Assocs.,* Case No. 4:16-cv-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ..................................................................................................................... 13

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

*Pettit v. Proctor & Gamble Co.*, Case No. 15-cv-2150-RS, Docket No. 135 (N.D. Cal. Mar. 25, 2019) ............................................................................................................................ 14

Pierce *v County of Orange*, 905 F. Supp. 2d 1017 (C.D. Cal. 2012) ............................................ 22

*Prison Legal News v. Schwarzenegger*, 561 F.Supp.2d 1095 (N.D. Cal. 2008) ...................... 18

*Rainbow Bus. Sols. v. MBF Leasing LLC*, Case No. 10-cv-01993-CW, 2017 WL 6017844 (N.D. Cal. Dec. 5, 2017) ........................................................................................................ 14

*Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012 (C.D. Cal. 2014) ............................... 8

*Salazar v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015) .................................................. 10

*Schmidt v. City of Modesto*, No. 1:17-cv-01411-DAD-MJS, 2018 WL 6593362 (E.D. Cal. Dec. 14, 2018) ............................................................................................................................ 20

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ...................................................................................... 8

*Stonebrae, L.P. v Toll Bros.*, No. C–08–0221 EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ............................................................................................................................................ 23

*United States ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, No. 2:96-1676-12, 2002 WL 34236885 (D.S.C. May 23, 2002) ........................................................................................ 19

*United States ex rel. Doe v. Pennsylvania Blue Shield*, 54 F. Supp.2d 410 (M.D. Pa. 1999) ...... 19

*United States ex rel. Nichols v. Sleep Medicine Center*, No. 3:12-cv-1080-J-39PDB, 2016 WL 11567785 (M.D. Fl. August 23, 2016) ................................................................................ 11

*United States ex rel. Savage v. Washington Closure Hanford, LLC*, No. 2:10-cv-05051 (E.D. Wash. August 27, 2019) ...................................................................................................... 19

*United States ex rel. Yasti v. Nagan Construction,* No. 17 Civ. 7163 (AT), 2021 WL 1063437 (S.D.N.Y. March 18, 2021) .................................................................................................. 19

*United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) ............... 9

*United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) ............................... 17

## Statutes

31 U.S.C. § 3730(b)(1) ......................................................................................................... 13, 21

31 U.S.C. § 3730(b)(2) ................................................................................................... 3, 4, 12, 21

31 U.S.C. § 3730(b)(5), ............................................................................................................. 12

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

31 U.S.C. § 3730(c)(1)-(4)..................................................................13, 21

31 U.S.C. § 3730(d)................................................................................1, 5

31 U.S.C. § 3730(e)(4)(B)....................................................................4, 12

Cal Gov't Code § 12652(b)(5)..................................................................12

Cal Gov't Code § 12652(c)(1).............................................................13, 21

Cal Gov't Code § 12652(c)(2)..............................................................4, 12

Cal Gov't Code § 12652(c)(3)...........................................................3, 4, 12

Cal Gov't Code § 12652(d)(3)(C).........................................................4, 12

Cal Gov't Code § 12652(e), (f), (h), (i).......................................................13

Cal Gov't Code § 12652(g)........................................................................1, 5

## Rules

Fed. R. Civ. P. 4(d)(4).............................................................................4, 11

Fed. R. Civ. P. 9(b).......................................................................................11

vi

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE THAT, on January 21, 2022 at 9:00 a.m., or as soon as thereafter as the matter may be heard in this Court, relator Michael Franchek ("relator") will and hereby does move for an Order awarding attorneys' fees, expenses and costs against defendants Workrite Ergonomics, LLC and Knape & Vogt Manufacturing Company ("Defendants").

This Court's Order of December 4, 2020 (ECF 26) retains jurisdiction over relator's claims for reasonable expenses, attorneys' fees and costs, and this Court's Order of August 20, 2021 (ECF 45) set a deadline of November 1, 2021 for the filing of a motion to recover the same. In its Order of July 22, 2021 (ECF 40), the Court referred discovery matters concerning the fees motion to a United States Magistrate Judge but did not refer the fees motion itself.

Pursuant to L.R. 54-5 relator's counsel certify they have made a number of attempts to resolve this matter, including, most recently, meeting and conferring in good faith with Defendants' counsel on October 27, 2021 in an effort to resolve this dispute without court action, but they were unable to do so, as outlined in the accompanying Declaration of Paul D. Scott in Support of Motion for Attorneys' Fees ("Scott Decl.").

This motion is based upon this Notice of Motion and accompanying Memorandum of Points and Authorities, the accompanying Declarations of Eric Havian ("Havian Decl."), Thomas B. Mayhew ("Mayhew Decl.), Paul D. Scott and Lani Anne Remick ("Remick Decl."), all other pleadings and documents in the Court's record, and such other evidence as may be submitted with the reply and at oral argument, if one is held.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

More than four years after relator filed a *qui tam* complaint alleging false claims by Defendants in their dealings with the United States and the State of California, the parties entered into a substantial settlement.  In December 2020 and January 2021, Defendants agreed to pay $7.1 million plus interest to the United States and more than $487,000 to the State of California. They also agreed to pay relator's reasonable expenses, attorneys' fees, and costs, pursuant to 31 U.S.C. § 3730(d)  (False Claims Act) and Cal. Gov't Code § 12652(g) (California False Claims

1

Act).  Accordingly, the only issue that remained to be decided was the amount of such fees, costs, and expenses.

Relator's counsel are experienced False Claims Act practitioners who have settled relator's fees in every other case prior to this one.  In this case too, relator's counsel made substantial informal efforts to avoid litigation over fees, including providing redacted copies of their billing records prior to the settlement on the merits.  Defendants however, made no settlement offer in any amount prior to the resolution of the case in chief.

After settlement of the merits portion of the case, Defendants still made no settlement offer regarding fees, despite the fact that they had already agreed to pay relator's counsels' reasonable fees as required by statute.  Defendants also provided no specific objections to relator's counsels' fees, instead requiring relator to serve discovery and file two separate motions to obtain court orders compelling them to disclose the basis for their objections as well as the rates they paid their own attorneys.  Only at this point did Defendants make their first settlement offer (via a Rule 68 Offer of Judgment), in October 2021.

Relator has met and conferred with Defendants in good faith as required by Local Rule 54-5, including making a counteroffer subsequent to the Offer of Judgment.  However, as detailed below, the objections to relator's fees asserted by Defendants are manifestly lacking in merit, and the parties remain far apart.  This motion for fees, expenses, and costs is the result.

## II.    BACKGROUND

### A.    The False Claims Act complaint and investigation

After months of investigation, preparation, research and drafting, relator's counsel filed a highly detailed 50-page *qui tam* complaint under seal in this district on May 23, 2016, alleging fraud and false claims by Defendants against the General Services Administration and other federal and state programs.  *See* ECF 1.  Defendants are an office furniture manufacturer, Workrite Ergonomics, LLC, and its parent company, Knape & Vogt Manufacturing Company. *Id.*  Previously a century-old family business, Knape & Vogt was acquired by private equity firm Wind Point Partners in 2006.  *See* Scott Decl. at ¶¶ 57-58, Ex. M-O.  Under Wind Point Partners, Knape & Vogt then, in turn, acquired several other entities, including Workrite Ergonomics in

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

2007. *Id.*

Relator's complaint alleged that Defendants submitted false claims to the federal and California governments for office furniture products that were overpriced.  The applicable contract provisions are complex and the facts and prices for individual products varied and specific, but reduced to its essence, relator's complaint alleged that, pursuant to its contracts with the federal and state governments, defendant Workrite was required to disclose to the governments its pricing to *all* customers, and it was required to offer the Government its "best price."  Instead, relator alleged, Defendants had knowingly offered commercial customers lower prices while charging far more to the governments.  Moreover, Defendants knowingly had not disclosed these lower prices during contract negotiations nor subsequently adjusted its prices downward or refunded the overpayments they received.  Relator alleged that these false claims caused millions of dollars of damage to United States and California government entities.

As required by the False Claims Act, in addition to filing the complaint, relator also transmitted to the United States and California a "written disclosure of substantially all material evidence and information the person possesses." 31 U.S.C. § 3730(b)(2); *see also* Cal Gov't Code § 12652(c)(3).  The Disclosure Statement included a comprehensive spreadsheet which provided a highly detailed compilation of Defendant Workrite's government and commercial sales for a wide array of products over the years 2007 through 2015, with 16 columns of data and comparisons between the pricing for multiple commercial customers versus the firm's government pricing, taking into consideration a multiplicity of different discounts and numerous distinctions between product types that were relevant to which discount might apply per the contract terms and per GSA's governing regulations regarding both initial disclosure and subsequent price reduction obligations.  Remick Decl. at ¶ 12.  It was a critical summary of evidence, which, when combined with other evidence regarding Defendants' failures to disclose and update GSA, helped lay the foundation for relator's successful fraud case.  *Id.*

The Disclosure Statement further included more than 1000 pages of documents organized into more than 70 exhibits regarding:  Workrite's pricing to commercial customers, Workrite's GSA contract and other federal and state contracts, the history of Workrite, and the corporate

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

relationship between Workrite and Knape & Vogt.  Remick Decl. at ¶ 13.  The Disclosure Statement also identified potential witnesses, their areas of knowledge, and last known contact information, as well as including relevant documents regarding many of the witnesses.  *Id.* All of the information was organized by topic and summarized in an Index spreadsheet, which also included a column of counsel's notes commenting on or describing the importance of each of the documents.  *Id.*

Pursuant to the specific requirements of the federal and state False Claims Acts, relator pre-disclosed the complaint to satisfy certain requirements of the "public disclosure bar," 31 U.S.C. § 3730(e)(4)(B), Cal Gov't Code § 12652(d)(3)(C), then filed the complaint under seal, 31 U.S.C. § 3730(b)(2), Cal Gov't Code § 12652(c)(2), and served the complaint and disclosure statement on the United States and California Attorney Generals in the manner required by statute.  *See* 31 U.S.C. § 3730(b)(2) (referencing Fed. R. Civ. P. 4(d)(4)); Cal Gov't Code § 12652(c)(3).

The U.S. Department of Justice and California Department of Justice, along with other federal agencies, thereafter began investigating relator's complaint and written disclosure of evidence, coming to relator and relator's counsel in the first instance to advance the case.  *See* Scott Decl. at ¶ 15.  The investigation included a day-long interview of the relator on September 19, 2016, attended by over a dozen state and federal government counsel, investigators and auditors.  *Id..* at  ¶ 16.

Subsequent to the interview, relator and his counsel were asked to provide additional documentation, which relator created and provided with the assistance of counsel.  Scott Decl. at ¶17.  In addition, relator's counsel was asked to assist the government with drafting a subpoena, which was subsequently issued to the Defendants.  *Id.*  Government attorneys also interviewed at least one central witness identified by relator in his Disclosure Statement, using the information provided by relator, and engaged in follow on discussions with relator's counsel regarding the same.  *Id.* The government confirmed relator's allegations of improper pricing and developed a damage estimate based on the discounts that should have been provided to the government under the contract provisions set forth in relator's complaint.  *Id.* at 18.  After a lengthy period of

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

document production, eventually settlement discussions began, during which government counsel continued to consult with and take input from relator's counsel. *Id.*

### B.    The settlements

After receipt of financial information from Defendants and additional negotiations, the federal government intervened and the case was settled on or about December 1, 2020 for the sum of $7.1 million plus 2% interest over five years, with the last scheduled payment in March 2025. Scott Decl. at ¶ 19. The state subsequently intervened and settled the claims under the California False Claim Act on or about January 13, 2021, for the payment of $487,634.24 plus 2% interest over five and a half years, with the last scheduled payment in June 2025. *Id.* at ¶ 20. Both settlements explicitly acknowledge that relator is entitled to collect his reasonable expenses, including attorneys' fees and costs, on both intervened and non-intervened claims, pursuant to 31 U.S.C. § 3730(d) (False Claims Act) and Cal. Gov't Code § 12652(g) (California False Claims Act). Scott Decl. at ¶¶ 26-27 (quoting language from settlement agreements).

Government officials described the settlement as a "significant recovery" and a "positive outcome," emphasizing its deterrent effect. Scott Decl. at ¶¶ 21-22, Exs. A & B (press releases). The following government officials all made public comments noting the importance of the case to the public fisc and/or anti-fraud enforcement efforts: Acting Assistant Attorney General Jeffrey Bossert Clark, then-U.S. Attorney David L. Anderson of the Northern District of California, then-GSA Inspector General Carol Fortine Ochoa, Special Agent in Charge Bryan D. Denny, Defense Criminal Investigative Service (DCIS), Western Field Office, and then-California Attorney General Xavier Becerra. *Id.* Both the United States Department of State and the GSA Office of Inspector General included the case in their Semi-Annual Report to Congress. Scott Decl. at ¶¶ 23-24, Exs. C & D.

Defendants continue to hold the GSA contract underlying the claims in this case, GS-28F-0030S. Since the November 7, 2016 ending date of the "Covered Conduct" described in the federal Settlement Agreement, Workrite has reported more than $6.8 million in sales under the contract. Scott Decl. at ¶ 63, Ex. T (screenshot of GSA schedule sales query results).

### C.    Counsel's work on the case

Consistent with the above description of the litigation, counsel's work on behalf of relator over the four years it took to resolve this matter included numerous tasks, including those outlined in the Scott Declaration.  Scott Decl. at ¶ 37 (summarizing services rendered by Mr. Scott and Ms. Remick); *see also* Remick Decl. at ¶ 11.  Counsel's time records detailing the amount of time spent on each of these tasks are attached.  Scott Decl. at ¶ 36, Ex. J; *see also* Scott Decl. at ¶ 38 (stating that the records accurately reflect the work that was performed and was reasonably necessary to accomplish the litigation objectives of this case); Remick Decl. at ¶ 11 (same).

### D.    Post-settlement proceedings regarding fees

As noted above, relator's counsel has settled their fees in every previous False Claims Act case they have handled.  Scott Decl. at ¶ 44.  In accordance with their usual practice, relator's counsel expressed a willingness to settle relator's fees at the same time as the underlying settlement of the merits of this case.  Scott Decl. at ¶ 45.  Relator's counsel even provided partially redacted time records to Defendants' counsel prior to settlement (on October 16, 2020).  *Id.* at ¶ 46.  Defendants, however, never made any settlement offer as to fees in connection with the FCA settlements.  *Id.*.  As noted above, Defendants ultimately conceded in both FCA settlements that attorneys' fees, expenses and costs were due, but the amounts due were not agreed upon.  *Id.*

Following the settlements, Defendants' False Claims Act counsel at Jenner & Block withdrew and Defendants substituted in new counsel paid for by their insurance carrier, per opposing counsel. Scott Decl. at ¶ 47; ECF 35 & 36.  On May 17, 2021, relator's counsel produced updated and unredacted copies of their detailed time and expense records to Defendants' new counsel for purposes of facilitating a possible settlement, but once again Defendants initially declined to extend an offer in settlement.  Scott Decl. at ¶ 48.  Defendants also did not identify any criticism of the billings provided by relators, other than to state generally that Defendants believed the fees sought were disproportionate to the role of relator's counsel in the litigation.  *Id.* at ¶ 49.

Relator's counsel subsequently prepared limited written discovery requests in an effort to learn the basis, if any, for Defendants' position.  Scott Decl. at ¶ 50.  Relator's discovery was served on or about June 9, 2021.  *Id.*  But in their initial responses served on or about July 8, 2021, Defendants declined to provide any substantive responses to the discovery, instead repeatedly asserting largely the same objections to each of relator's requests.  *Id.* at ¶ 50.

After meeting and conferring with Defendants' new counsel unsuccessfully, relator's counsel thereafter sought the intervention of the Court which referred the matter to Magistrate Kim, who subsequently ordered Defendants to provide responses to relator's interrogatories that sought the basis for Defendants' objection to relator's fees claim.  *See* Scott Decl. at ¶ 51; ECF No. 43, August 12, 2021 Order.

Upon a review of the supplementary responses, which proposed dramatically below-market rates be paid to relator's counsel, *see* Scott Decl. at ¶ 52 & Ex. K, Response to Interrogatory No. 3, relator returned to the Court again, seeking an order compelling Defendants to produce, *inter alia*, additional information sought in the interrogatories regarding the rates that Defendants paid their own counsel in this case, which Magistrate Kim then ordered Defendants to produce as well.  Scott Decl. at ¶ 53; ECF No. 47, September 29, 2021 Order.  Notably missing from the information Defendants produced, however, notwithstanding the Court's order, was the current (2021) rate information for their former lead counsel during the main portion of the case, Matthew Haws of Jenner & Block.  *See* Scott Decl. at ¶ 55, Ex. L, Responses to Interrogatories Nos. 5-6.  Relator's counsel repeatedly requested the information, but current counsel for Defendants have represented that they have not been able to get the information from Defendants' former counsel. *Id.* at ¶ 55.  Current counsel for Defendants suggested that *perhaps* Defendants' former counsel would produce the information if the parties entered into a protective order, but relator's counsel declined that approach on the basis that a protective order was not justified and would represent an inefficient use of the Court and the parties' time.  *Id.*.  Accordingly, at present, relator's counsel are only in possession of the billing rates of Defendants' former lead counsel through some point in 2020.  *Id.*

7

On or about October 1, 2021, *i.e.,* after two motions to compel had been filed and granted, and prior to the time that they had provided their second supplemental responses to relator's discovery as ordered by the Court, Defendants made their first settlement offer, in the form of an offer of judgment. Scott Decl. at ¶ 56. On October 14, 2021, they produced the above-referenced second supplemental responses to relator's discovery. *Id.*; Ex. L. On October 18, 2021 and October 21, 2021, relator's counsel communicated to defense counsel about meeting and conferring regarding the fees claim. *Id.* On October 27, 2021, the parties met and conferred regarding the fees claim. *Id.* Relator made a counteroffer, but the parties remained far apart and were unable to reach a settlement of the claim. *Id.*

Relator now brings this motion seeking the award of reasonable attorneys' fees, plus a 10% lodestar enhancement (*i.e.*, a lodestar multiplier of 1.1), along with $444 in expenses and costs. This motion includes counsels' time through October 14, 2021. After the hearing date, relator's counsel will supplement the information provided herein with the time spent on this motion, the reply, and any oral argument.

## III.   ARGUMENT

### A.  Relator's lodestar is presumptively reasonable.

In the Ninth Circuit and under California state law, reasonable attorneys' fees are determined by first calculating the "lodestar." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) (citing *Serrano v. Priest*, 20 Cal. 3d 25 (1977)). The "lodestar" is calculated by compiling the number of hours spent on litigating the case and multiplying it by a reasonable hourly rate of compensation for each attorney. *Morales*, 96 F.3d at 363; *Ketchum*, 24 Cal. 4th at 1131-32.[1] There is a strong presumption that the lodestar, including all hours reasonably spent, is a reasonable fee. *Morales*, 96 F.3d at 363, 364 n.8.

---

[1] "Lodestar analysis is generally the same under California law and Federal law." *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1017 (C.D. Cal. 2014).

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

1

2        **1.   The requested hourly rate is reasonable.**

3            A reasonable hourly rate must be based on the "prevailing market rates in the relevant

4    community." *See Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). "Generally,

5    when determining a reasonable hourly rate, the relevant community is the forum in which the

6    district sits," *i.e.,* here, the Northern District of California, specifically San Francisco. *Camacho*

7    *v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  "Affidavits of the plaintiffs'

8    attorney and other attorneys regarding prevailing fees in the community, and rate determinations

9    in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory

10   evidence of the prevailing market rate."  *United Steelworkers of America v. Phelps Dodge Corp.*,

11   896 F.2d 403, 407 (9th Cir. 1990).  The established standard for determining a reasonable hourly

12   rate is the "rate prevailing in the community for similar work performed by attorneys of

13   comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d

14   973, 979 (9th Cir.2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir.1997)).  Courts

15   also may rely on previous court decisions awarding similar rates for work in the same

16   geographical area by attorneys with comparable levels of experience.  *See, e.g., Nadarajah v.*

17   *Holder*, 569 F.3d 906, 917 (9th Cir. 2009).

18           Relator claims an hourly rate of $919 for Mr. Scott's time and $850 for Ms. Remick's

19   time.  Counsel is entitled to be compensated for all time at current, *i.e.,* 2021, rates.  *Missouri v*

20   *Jenkins*, 491 U.S. 274, 283-84, 109 S. Ct. 2463 (1989).  The following evidence establishes the

21   reasonableness of counsel's rates.

22           **a.   Declarations of relator's counsel**

23                **i.      Counsel's skill and experience**

24           Relator's counsel's law firm focuses exclusively on representing plaintiffs in

25   whistleblower cases, including False Claims Act cases.  Both Mr. Scott and Ms. Remick are

26   highly experienced attorneys, with Mr. Scott having graduated from Yale Law School in 1989

27   and Ms. Remick having graduated from University of Pennsylvania Law School in 1993.  Scott

28   Decl. at ¶ 3; Remick Decl. at ¶ 2.  Both also formerly worked as Trial Attorneys in the Civil

     Fraud Section of the United States Department of Justice in Washington, D.C. – the Section of

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

the DOJ responsible for False Claims Act cases nationwide. Scott Decl. at ¶ 4; Remick Decl. at ¶ 4. Counsel's declarations further detail their qualifications. *See* Scott Decl. at ¶¶ 3-14; Remick Decl. at ¶¶ 2-8.

### ii.    Counsel's customary rates

As noted above, previous to this case, counsel have always been able to settle their fee claims in False Claims Act cases. Scott Decl. at ¶ 44. Thus, they cannot cite to any previous court opinions awarding them their requested rates. For settlement purposes in previous federal and state False Claims Act cases, counsel have set their rate by, and have been compensated in accordance with, the Legal Services Index (LSI) Adjusted Laffey Matrix. *Id.* at ¶ 28.[2] Pursuant to the LSI Adjusted Laffey Matrix, the hourly rate for both Mr. Scott and Ms. Remick would be $919, *id.* at ¶ 29, subject to an upward locality rate adjustment for San Francisco, with a resulting rate of $998. *Id.* at ¶ 31.

Here, however, pursuant to the law of the Ninth Circuit, counsel have not relied on the LSI Adjusted Laffey Matrix in support of this application, but base their requested hourly rates on the hourly rates in the Northern District for similar work by attorneys of comparable skill, experience and reputation, including, notably, lead counsel for Defendants in the underlying case. With relevant rates in this district ranging up to $1,200 for comparable counsel doing similar work, *see* sections III.A.1.b and III.A.1.c, *infra*, relator's counsel conservatively seek rates here on the lower end of that range, *viz*, $919 per hour for Mr. Scott and $850 per hour for Ms. Remick, which is a discounted rate from what they could request.[3]

### b.    Declarations of other Northern District attorneys re: counsel's skill and experience and rates for similar work in this District

In addition to their own declarations, counsel have submitted the affidavits of attorneys Eric Havian and Thomas B. Mayhew in support of their requested hourly rates. Both Mr. Havian

---

[2] The LSI Adjusted Laffey Matrix is distinct from the USAO Laffey Matrix, which has been discredited and applies to non-complex cases. *DL v. District of Columbia*, 924 F.3d 585, 592-93 (D.C. Cir. 2019); *Salazar v. District of Columbia*, 809 F.3d 58, 64-65 (D.C. Cir. 2015).

[3] Relator is not claiming fees for the services of support staff who worked on the case. Scott Decl. at ¶ 40.

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

and Mr. Mayhew are highly experienced and skilled attorneys who practice in firms located in San Francisco in the Northern District. Havian Decl. at ¶¶ 1-5; Mayhew Decl. at ¶¶ 1-5. The work of both attorneys and their firms includes representing plaintiffs and defendants in False Claims Act cases and other complex civil litigation. Havian Decl. at ¶ 3-5; Mayhew Decl. at ¶¶ 6-8. Both are generally familiar with this case and Mr. Havian also explains the complexity of False Claims Act cases in general. Havian Decl. at ¶¶ 9-10; Mayhew Decl. at ¶ 11. Both Mr. Havian and Mr. Mayhew are familiar with relator's counsel and their work and reputations. Havian Decl. at ¶ 8; Mayhew Decl. at ¶¶ 7 & 9. Both have opined that the hourly rates sought by relator's counsel for work in this case are at or less than the market rate in the Northern District for similar work performed by attorneys of comparable skill, experience, and reputation. Havian Decl. at ¶¶ 6-11; Mayhew Decl. at ¶¶ 6-11.

### c. Rate determinations in other Northern District cases

#### i. *Qui tam* cases are complex civil litigation.

False Claims Act *qui tam* cases are by their nature complex, involving multiple parties, multiple government entities, and an extensive body of law unique to the False Claims Act and *qui tam* suits in particular, as well as the statutes, regulations and contract provisions unique to each particular case. Havian Decl. at ¶9; *see also United States ex rel. Nichols v. Sleep Medicine Center*, No. 3:12-cv-1080-J-39PDB, 2016 WL 11567785 (M.D. Fl. August 23, 2016) (defining the market for "similar services" as "*qui tam* or complex commercial or employment litigation"). False Claims Act cases, and *qui tam* cases in particular, have unique intricacies, such as pre-disclosure of the complaint in order to maintain the right to a relator's share under certain circumstances, 31 U.S.C. § 3730(e)(4)(B), Cal Gov't Code § 12652(d)(3)(C), mandatory filing of the *qui tam* complaint under seal, 31 U.S.C. § 3730(b)(2), Cal Gov't Code § 12652(c)(2), the requirement of a Disclosure Statement to accompany the complaint, 31 U.S.C. § 3730(b)(2) (referencing Fed. R. Civ. P. 4(d)(4)); Cal Gov't Code § 12652(c)(3), statutory requirements regarding service on the Government, *id.*, the "first-to-file" rule, 31 U.S.C. § 3730(b)(5), Cal Gov't Code § 12652(b)(5), the public disclosure bar, and the applicability of the heightened pleading standard in Federal Rule of Civil Procedure 9(b). *Godecke v. Kinetic Concepts, Inc.*,

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

937 F.3d 1201, 1208 (2019) ("A claim under the FCA must not only be plausible, Fed. R. Civ. P. 8(a), but pled with particularity under Rule 9(b).") (citation omitted). The statutory scheme is also unique in that the relator brings the case on behalf of the government(s), 31 U.S.C. § 3730(b)(1), Cal Gov't Code § 12652(c)(1), and remains a party with certain rights to participate whether the government chooses to intervene in the case or not. 31 U.S.C. § 3730(c)(1)-(4), Cal Gov't Code § 12652(e), (f), (h), (i).

This case was no exception in terms of complexity. After extensive investigation, counsel drafted a 50-page complaint and an accompanying Disclosure Statement with over one thousand pages of exhibits. These documents were pre-disclosed, the complaint filed under seal, and the complaint and disclosure served on both the United States and the State of California pursuant to statutory requirements. Subsequently, with relator's counsel's assistance as detailed above, the governments conducted a lengthy investigation, seeking multiple extensions of the initial 60-day seal period, with relator's consent. Even in the absence of active litigation, it took four years to resolve the merits of the case. Scott Decl. at ¶ 15-20.

The staffing of the case further demonstrates its complexity. Defendants staffed the case with at least 13 attorneys and other personnel. *See* Scott Decl., Ex. L, Interrogatory Response Nos. 4 & 5 (listing all staff who worked on the case). Although they had local counsel from McShane & Bowie of Grand Rapids, Michigan (where Knape & Vogt is located) working on the case, *see id.*, Defendants had to bring in lead counsel Matthew Haws, a Jenner & Block lawyer from across the country in Washington, D.C., who was experienced in the False Claims Act and GSA contracting. Scott Decl., Ex. P, Jenner & Block Firm Bio for Matthew Haws.

On the plaintiffs' side, the Government and relator's counsel also devoted significant resources and expertise to the case. As noted in the governments' press releases, in addition to lawyers at DOJ, the U.S. Attorneys' Office for the Northern District of California, GSA, and the California Attorney General's office, the case was worked by investigators and auditors from GSA's Office of the Inspector General, the Department of State's Office of Inspector General, the Defense Criminal Investigative Service, the Defense Contract Audit Agency, and the U.S. Department of Veterans Affairs' Office of Inspector General. Scott Decl., Exs. A & B.

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

Relator's counsel worked with government counsel, staffing the case leanly with two experienced attorneys and their support staff.

###        ii.    Decisions by Courts in the Northern District awarding similar rates for complex litigation by attorneys with comparable levels of experience

Hourly rate determinations in other recent cases in the Northern District of California for similar work, *i.e.,* complex civil litigation, by attorneys of comparable skill and experience at firms that handle False Claims Act cases also support the reasonableness of relator's counsels' requested rates.

In *Perez v. Rash Curtis & Assocs.,* Case No. 4:16-cv-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020), the court collected Northern District cases reflecting the following rates as reasonable for "complex, high-stakes litigation" in the "San Francisco Bay Area":

> $845 to $1200 for "senior attorneys" (2016)
> $870 to $1200 for "senior attorneys" (2017)
> $950 for "partners" (2010) (*see Loretz, supra* )
> Up to $975 for "partners" and $800 for "non-partner attorneys" (2015)
> Up to $950 (2017)
> Up to $900 (2018)

*Id.* at * 20 (citations omitted).

Even more specific to the circumstances here, fee awards to attorneys from local firms that handle False Claims Act cases as well as other complex civil litigation further support the reasonableness of relator's counsel's rates.  For example, Gutride Safier, LLP (GSLLP) is a smaller law firm headquartered in San Francisco whose practice areas include plaintiffs' side False Claims Act cases.  *See* Scott Decl. at ¶ 32. Their rates of $950 and $1,025 per hour for attorneys with qualifications and seniority similar to those of relator's counsel were recently deemed reasonable and representative of the prevailing market rate in a case involving defective laptops with an estimated settlement value of $8.3-11.97 million.  *Carlotti v. ASUS Comput. Int'l,* Case No. 18-cv-03369-DMR, 2020 WL 3414653 at ** 5-6, 7 (N.D. Cal. Jun. 22, 2020); *see also* Scott Decl. at ¶ 33 & Ex. G (copy of declaration relied upon by the court regarding attorneys'

qualifications). Notably, these were 2020 rates. The Court also noted four other recent cases in this district in which these or similar rates were approved for attorneys from the firm.[4]

Similarly, the case of *In re Wells Fargo & Company Shareholder Derivative Litigation*, 445 F.Supp.3d 508 (N.D. Cal. 2020), involved allegations that Wells Fargo Bank created deposit and credit accounts for their customers without the customers' knowledge. Plaintiffs were represented by Lieff, Cabraser, Heiman & Bernstein, LLP, a San Francisco firm which also does plaintiffs' side False Claims Act work. *See* Scott Decl. at ¶ 32. The Court conducted a lodestar calculation for purposes of "cross-checking" the award of attorneys' fees based on a percentage of the recovery. 445 F. Supp. 3d at 527 n. 10. In this context, the court approved, *inter alia*, an hourly rate of $1,075 for a 1972 graduate, $950 for a 1988 graduate, $900 for a 1993 graduate and $775 for a 2000 graduate from Lieff, Cabraser. *Id.*; *see also* Scott Decl. at ¶ 34 & Ex. H (copy of declaration relied upon by the court regarding attorneys' qualifications). Again, these were 2020 rates.

In addition, more than 10 years ago, in *Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203, 1211 (N.D. Cal. 2010), the Court awarded rates of $900 and $775 per hour to experienced attorneys at Cotchett, Pitre and McCarthy, LLP, another San Francisco firm which does plaintiffs' side False Claims Act work. *See* Scott Decl. at ¶ 35 & Ex. I (copy of declaration relied upon by the court regarding attorneys' qualifications). *See also In re Cathode Tube Antitrust Litigation*, Master File No. 3:07-cv-5944 JST, 2016 WL 721680 at *43 (N.D. Cal. February 29, 2016) (string citing N.D. Cal. cases from 2013-15 approving rates up to $1,095).

In sum, these reported Northern District cases further establish the reasonableness of relator's counsel's requested hourly rates in 2021 of $919 and $850 for Mr. Scott and Ms. Remick, respectively, *i.e.,* at the lower end of the range for rates that have been approved for

---

[4]       The court cited the following additional cases: *Fitzhenry-Russell v. Coca-Cola Co.*, Case No. 17-cv-603-EJD, 17 2019 WL 11557486 at *9 (N.D. Cal. Oct. 3, 2019) (rates up to $1,025); *Pettit v. Proctor & Gamble Co.*, Case No. 15-cv-2150-RS, Docket No. 135, at 9 (N.D. Cal. Mar. 25, 2019) (2018 rates up to $975); *Rainbow Bus. Sols. v. MBF Leasing LLC*, Case No. 10-cv-01993-CW, 2017 WL 6017844 at *1-2 (N.D. Cal. Dec. 5, 2017) (rates up to $950); *Kumar v. Salov N. Am. Corp.*, Case No. 14-cv-2411-YGR, 2017 WL 2902898 at *8 (N.D. Cal. July 7, 2017) (2017 rates up to $950).

Relator requests judicial notice of Exs. A-I and M-T, based on the accompanying Scott declaration. See FRE 201.

14

attorneys of comparable seniority in the Northern District both recently and as long as five to ten years ago, in cases involving complex civil litigation and/or other San Francisco firms that handle plaintiffs' side False Claims Act cases.

> ### d.   Defense counsel's rates in this matter

The hourly rate of lead defense counsel in this case, Matthew Haws of Jenner & Block, also provides a highly relevant benchmark for demonstrating the reasonableness of relator's counsel's requested hourly rate.  According to his firm's website, Mr. Haws received his law degree in 2002 from George Washington University.  Scott Decl., Ex. P.  He is not admitted to practice in California and is listed as a member of Jenner & Block's Washington, D.C. office. *Id.*  His firm biography further details his qualifications and experience.  *Id.*

Matthew Haws' 2020 hourly rate for this case was $915.  Scott Decl. at ¶ 54, Ex. L, Response to Interrogatories No. 5 & 6.  This is almost exactly the same rate ($914) as that set forth in the LSI Adjusted Laffey Matrix (the resource that relators' counsel uses to set their rates) for attorneys of Mr. Haws experience in 2020.  *See* Scott Decl. at ¶ 32, Ex. E (copy of matrix).  The $919 rate being claimed by relator's counsel is just the 2021 rate listed in the same resource (without locality adjustment).  *Id.*  Relator does not have Mr. Haws' 2021 rate information, because, notwithstanding this Court's order requiring Defendants to provide it, their current counsel reports that Mr. Haws' firm has refused to provide that information.  *Id.* at ¶ 55.

In all events, the 2020 rate paid to Mr. Haws by Defendants for his work in this very case is strong evidence that relator's claimed rates are reasonable for the work performed on this matter. *Gutierrez v. Wells Fargo Bank, N.A.,* No. C 07–05923 WHA, 2015 WL 2438274 at *5 (N.D. Cal. May 25, 2015) (approving plaintiffs' counsels' hourly rates where counsel had waited seven years to get paid and claimed rates were "commensurate with defense counsel's rates").

In fact, it would be reasonable for relator's counsel to seek a rate higher than Mr. Haws: Mr. Haws has less experience than either Mr. Scott or Ms. Remick; he is not admitted in California; his rate is reflective of rates in Washington, D.C., which courts in this District have recognized are lower than those of San Francisco, *see, e.g., Brinker v. Normandin's*, No. 14-cv-03007-EJD, 2017 WL 713554 at *2 (N.D. Cal. Feb. 23, 2017) (noting that, in order to tailor

Washington, D.C. rates to the San Francisco market, D.C. rates would have to be adjusted upward by 9% locality adjustment rate); and $915 is his 2020 rate, while 2021 rates apply to this matter. Rather than seeking higher rates, though, relator's counsel are seeking base rates that are roughly the same as or materially lower than Mr. Haws' rates ($919 for Mr. Scott and $850 for Ms. Remick).[5] Accordingly, Mr. Haws' rate is strong evidence of the reasonableness of relator's counsel's rates for this case in particular.

 **2. There is no basis for Defendants' suggested hourly rates for relator's counsel.**

Defendants contend that the appropriate rate of pay for Relator's counsel is "between $400-$650 per hour . . . based on the opinion of local attorneys [which opposing counsel later explained was him] and prior awards of the Northern District Court." *See* ECF 46, September 23, 2021 Joint Letter Brief re Discovery Dispute, at 2. As detailed above, however, affidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees in the community, rate determinations in other cases, and the rates charged by Defendants' own lead counsel who worked on the case all support the reasonableness of relator's counsel's requested rates.

In addition, rates paid by Defendants to legal staff other than Mr. Haws for work on this case further demonstrate the lack of support for their proposed rates. The closest rate to the $650 Defendants claim as the appropriate rate for Mr. Scott is the $685 an hour rate paid by Defendants for the services of attorney Satenik Harutyunyan, a 2016 graduate of the George Washington University Law School who works out of Jenner's Los Angeles office, *i.e.,* someone with only five years' experience, compared to Mr. Scott's experience of more than 30 years. *See* Scott Decl. at ¶¶ 54-60 & Ex. Q (Harutyunyan firm bio from Jenner & Block website); Ex L, Response to Interrogatories Nos. 5 & 6 (listing rates paid). With respect to the rates closest to the $400 claimed to be reasonable for Ms. Remick, Defendants paid $370 an hour for Jenner & Block personnel Cheryl Olson and Bryan Power. Scott Decl. at ¶ 54; Ex. L, Response to

---

[5] Due to Mr. Haws' reported refusal to comply with the Court's order to Defendants and provide his rate information for 2021, relator's counsel are left to assume Mr. Haws' rates increased by at least the $5 that the LSI Adjusted Laffey Matrix (and thus relator's lead counsel) increased their applicable rates in 2021.

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

Interrogatories Nos. 5 & 6 (listing rates paid). Mr. Power is not even an attorney at the firm but appears to be a Litigation Support Specialist. Scott Decl. at ¶ 62, Ex. S (press release from Jenner & Block website). Ms. Olson's title as listed recently on the firm website is Senior Paralegal. *Id.* at ¶ 61, Ex. R. Moreover, the rates in Defendants' interrogatory responses are not the current 2021 rates for these Jenner & Block personnel, but rather the rates paid by Defendants during the litigation between 2017 to 2020. Scott Decl. at ¶ 54; Ex L, Response to Interrogatory No. 5 (stating that rates provided were rates throughout the case unless shown otherwise). In short, the hourly rates paid by Defendants for their own counsel and for non-lawyer personnel further demonstrate the unreasonableness of Defendants' contention that $400-$650 would be an appropriate rate for relator's counsel's legal services in this case.

### 3. Counsel's hours spent on this case are reasonable.

Hours are reasonably spent where they are "reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley v. Eckerhart*, 461 U.S. 424, 431, 103 S. Ct. 1933 (1983). Reasonable hours are those that "would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery." *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir. 2003) (citing *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir. 1989)). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required spend on a case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Hours supported by counsel's documentation are presumptively reasonable. *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 406-07 (9th Cir. 1990) ("We emphasize that hours actually expended in the litigation are not to be disallowed without a supporting rationale.").

### a. Counsel's time is accurately documented with time records and declarations of counsel.

Here, as detailed above, relator's counsel spent a total of 460.8 hours through October 14, 2021 on the merits in this case, which included the major tasks listed in the Scott Declaration.

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

*See id.* at ¶¶ 36-37.  Counsel kept time records in the regular course of business in increments of one-tenth of an hour documenting their work throughout this matter, copies of which are attached as Exhibit J to the Scott Declaration.  *Id.*  Counsel each state in their declaration that the time records "accurately reflect the work" that they each performed.  *See* Scott Decl. at ¶ 38; Remick Decl. at ¶ 11.

### b.  Counsel have exercised billing judgment.

In addition, relator's counsel have exercised "billing judgment," by excluding time actually expended on this matter from their fee application.  *See Prison Legal News v. Schwarzenegger*, 561 F.Supp.2d 1095, 1104 (N.D. Cal. 2008) (where "[p]laintiffs attorneys have already reviewed their billing records and made discrete billing reductions," court declined to further reduce hours based on claims of excessiveness).  Such excluded time includes, but is not limited to:  redundant or excessive time spent on tasks; certain of the time entries to which Defendants objected; contact with the press or drafting press materials; work on purely clerical matters; and substantial time spent on the case but simply not billed.  Scott Decl. at ¶ 39; Remick Decl. at ¶ 11.  Counsel estimate that they have eliminated approximately 10% from the fee petition for such "billing judgment." Scott Decl. at ¶ 39.  Counsel also are not seeking fees for work performed by other staff in their office beyond Mr. Scott and Ms. Remick.  *Id.* at ¶ 40.

Based on the foregoing, counsel have adequately demonstrated the reasonableness of their hours spent.

### 4.  Defendants have not met their burden of challenging counsel's hours.

The party opposing a fee award "bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged."  *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995).  Here, Defendants' objections either fail to meet that burden or fail as a matter of law.

### a.    Hours incurred after Governments began investigating

Defendants object to hours incurred after "the date that the State of California and the Federal Government for all practical purposes took over prosecution of the case by issuing subpoenas to Defendants, investigating the claims, and negotiating the ultimate settlement."

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

Scott Decl. Ex. K, Response to Interrogatory No. 2 at 5.  This meritless objection reveals a lack of understanding of the relator's role in a False Claims Act case.  Pursuant to the Act, a relator may bring an action for a violation of the statute "for the person and for the United States Government."  31 U.S.C. § 3730(b)(1); Cal. Gov't Code § 12652(c)(1).  The government then has a period in which to investigate the allegations, after which it "may elect to intervene and proceed with the action."  *Id.* at 3730(b)(2).  Even if the Government intervenes, however, the relator "shall have the right to continue as a party to the action."  *Id.* at 3730(c).

Thus, after the Government begins investigating, the relator remains a party and counsel's hours are compensable.  *United States ex rel. Doe v. Pennsylvania Blue Shield*, 54 F. Supp.2d 410, 414 (M.D. Pa. 1999) ("summarily" rejecting argument that relator's counsel's hours "should have been reduced because the government was conducting a vigorous investigation").  In fact, even after the Government formally intervenes in an action, relator's counsel's time is still compensable under the Act.  *See, e.g., United States ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, No. 2:96-1676-12, 2002 WL 34236885 at *15 (D.S.C. May 23, 2002).

In addition, here, relator's counsel's hours declined significantly after the Government began investigating, reflecting the active role played by the Government.  *See United States ex rel. Savage v. Washington Closure Hanford, LLC*, No. 2:10-cv-05051 (E.D. Wash. August 27, 2019) (declining to reduce hours claimed by relator's counsel after intervention because "the Court believes that Relator's reduced post-intervention role is adequately reflected in the number of hours expended during that phase") (copy attached to Scott Declaration as Exhibit U).

### b.    Hours prior to being formally retained by client

Defendants object to all hours expended "prior to the date the 'potential client' retained the attorneys as counsel."  Scott Decl., Ex. K, Response to Interrogatory No. 2 at 4.  The law is clear, however, that attorney time spent on a case prior to formal retention by the client is compensable.  *See United States ex rel. Yasti v. Nagan Construction,* No. 17 Civ. 7163 (AT), 2021 WL 1063437 at *8 (S.D.N.Y. March 18, 2021) (in FCA case, refusing to exclude time before formal retention, noting that "Courts have consistently held that fee-shifting statutes allow compensation for services rendered before a representation agreement was executed. . . .")

(citations omitted); *see also Schmidt v. City of Modesto*, No. 1:17-cv-01411-DAD-MJS, 2018 WL 6593362 at *8 (E.D. Cal. Dec. 14, 2018); *MacDonald v. Ford Motor Co.*, No. 13-cv-02988-JST, 2016 WL 3055643 at *3 (N.D. Cal. May 31, 2016).

            **c.**        **Time spent on Complaint**

        Defendants object that the time counsel spent on the Complaint was "excessive and unreasonable." Scott Decl., Ex. K, Response to Interrogatory No. 2 at 6, 9. This argument also has no merit. As explained in Mr. Havian's declaration, the Complaint and Disclosure Statement are particularly critical in False Claims Act cases. Havian Decl. at 10. These documents are key to securing government interest in the case, convincing the government to devote resources to investigating the case, and eventually to securing government intervention -- without which, a case's chances of success materially decline. *Id.* Accordingly, it is critically important that the Complaint and Disclosure be as robust as possible. In this case, the complaint involved the complicated rules governing the pricing of GSA contracts and the detailed comparison of myriad prices and discounts offered to Defendants' other customers over time to the prices and discounts offered to the Government. Here, the record demonstrates that counsel prepared a Complaint and Disclosure that provided a clear road map through this complicated thicket that led to a successful settlement, precisely as a well-prepared complaint and disclosure should.

        In addition, False Claims Act complaints must meet the particularity strictures of Rule 9(b) or suffer dismissal, ending the case -- another reason why they must be well-pleaded and may take longer to prepare. *See United States ex rel. Doe v. Pennsylvania Blue Shield*, 54 F. Supp.2d 410, 415 (M.D. Pa. 1999) (rejecting argument that counsel spent "too much" time on the complaint and instead finding hours spent were reasonable "[g]iven the complicated nature of the actions and the heightened pleading requirement for complaints alleging fraud . . .").

        Finally, Defendants complain in their Interrogatory responses that $110,590 is far too much money to spend on a complaint. As an initial matter, counsel has reduced Ms. Remick's hourly billing rate and exercised billing judgment so the actual amount for drafting the complaint is lower. In any event, counsel exercised their professional judgment based on considerable experience in determining an appropriate amount of time to spend on the complaint. Scott Decl.

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

at ¶ 39.  Counsel are both former DOJ attorneys whose jobs at DOJ included evaluating the complaints submitted by other relator's counsel nationwide and determining whether to investigate and intervene.  *Id.* at ¶ 4; Remick Decl. at ¶ 4.  This matter was complicated and is a prime example of where, had counsel been "more of a slacker," the case may not have succeeded.  *Moreno v. City of Sacramento*, 534 F.3d at 1112; *see also Charlebois v. Angels Baseball*, 993 F. Supp. 2d 1109, 1124-25 (C.D. Cal. 2012) (after finding that 78 hours would not have been an excessive amount of time for researching and drafting a non-FCA complaint with just "3 pages of facts and five causes of action," court commented that, "Frankly, the Court suspects that several of the complaints it dismisses every week fail to state a claim because attorneys spend too little time researching the grounds for their case; the Court sees no reason why it should punish the attorney that researches the law and facts before putting paper to pen.").

### d.    "Clerical" tasks

Defendants also complain of billing of "clerical" tasks.  Entries identified as clerical or not appropriate for an attorney to perform include:  "factual research and drafting complaint" and work on a spreadsheet and an Index to the Disclosure Statement.  Scott Decl., Ex. K, Response to Interrogatory No. 2 at 7-8.

As an initial matter, to the extent counsel's time entries initially provided to Defendants as part of settlement efforts may have inadvertently included purely clerical tasks, counsel has since attempted to delete all such entries as part of their "billing judgment."  Scott Decl. at ¶ 39. Other tasks complained of by Defendants, however, such as factual research prior to filing a complaint or talking with a court clerk about a filing (especially an under seal filing such as are required under the FCA), are not "clerical" and are properly performed by attorneys.  *See, e.g., Johnson v. Shobeiri*, No. 18-cv-04816-VKD, 2019 WL 5458106 at *6 (N.D. Cal. October 24, 2019) (counsel's pre-litigation investigation and "time entries indicating that counsel reviewed court filings, orders, and other documents related to the case" were not "clerical" and did not warrant a reduction of fees); *Elder v. Nat'l Conference of Bar Examiners*, No. C 11–00199 SI, 2011 WL 4079623 at *4 (N.D. Cal. September 12, 2011) ("[T]his Court agrees with other Judges in this district who have concluded that, at least in this relevant legal market, 'tasks such as filing

documents on ECF, revising and preparing documents referred to in the time records as 'filings,' and organizing certain files in anticipation of preparing a motion are not clerical tasks.'") (citing *Californians for Disability Rights v. Cal. DOT*, 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. December 13, 2010)).

Defendants particularly complain of time Ms. Remick spent creating a spreadsheet and an index, *see* Scott Decl., Ex. K, Response to Interrogatory No. 2 at 8, but this work also was not "clerical." As described above, in this case the spreadsheet was in fact a key piece of demonstrative evidence synthesizing critical information the relator brought to bear on the case. *See* Remick Decl. at ¶ 12. It was highly complicated, and had to be executed correctly by someone who understood the underlying evidence and relevant regulatory and contractual obligations, and that is exactly how it was handled. Likewise the "Index" was actually another spreadsheet which organized the evidence into sections by topic and included counsels' notes regarding the documents. *Id.* at ¶ 13. The mere fact that an attorney employs one form of software versus another to perform a task, or numbers versus words to present an argument, is obviously not dispositive of whether it was reasonable for counsel to spend time on the matter, particularly when numbers are so integral to the underlying legal theory. *See, e.g., Pierce v County of Orange*, 905 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) (tasks including "compiling trial documents and exhibits" and doing "data entry" which "required accurate analysis and entry of the data" were not "clerical" and were properly reimbursable).

Moreover, contrary to Defendants' assertions, to the extent some of these lawyerly tasks are "lower level" tasks than others, it is not necessary for counsel to charge a lower rate for them. *Moralez v. Whole Foods Mkt., Inc.*, No. C 12–01072 CRB, 2013 WL 3967639 at *5 (N.D. Cal. July 31, 2013) (rejecting argument that certain tasks performed by lawyer should have been charged at a paralegal's rate) (citing *Moreno v. Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008)). Indeed, there are plainly significant efficiencies to be had from not employing thirteen different lawyers and other staff on a case (like Defendants), with senior level attorneys then taking the time to educate and communicate with other personnel and review their work regarding the myriad tasks necessary to complete a case.

### e. "Block billing"

Similarly, most of counsel's time entries which Defendants contend are "block-billed," *e.g.,* ["factual research and drafting complaint" 7.2] do not actually reflect "block billing," but merely reflect the fact that the task was time-consuming. *Dragu v. Motion Picture Indus. Health Plan*, 159 F. Supp. 3d 1121, 1129 (N.D. Cal. 2016) ("Many of the entries the Plan has identified as block entries are not, in fact, examples of block billing; they are tasks which ordinarily take a great amount of time: drafting motions, conducting legal research, and analyzing the administrative record. Thus, it does not appear that [counsel] has lumped together discrete tasks; he simply chose to devote large chunks of time to a single task.").  Moreover, to the extent some entries could possibly be considered block-billed, that does not render them non-compensable. *Oberfelder v. City of Petaluma*, No. C–98–1470 MHP, 2002 WL 472308 at *3 (N.D. Cal. Jan. 29, 2002), *aff'd sub nom Oberfelder v. Bertoli*, 67 Fed. Appx 408 (9th Cir. 2003) (unpublished opinion) (block billing "does not undermine the compensability of time reasonably expended where the billing statement meets the basic requirement of listing the hours and identifying the general subject matter of time expenditures"); *Stonebrae, L.P. v Toll Bros.*, No. C–08–0221 EMC, 2011 WL 1334444 at *9 (N.D. Cal. Apr. 7, 2011) (stating that "[b]lock-billing is a typical practice in this district, and blocked-bills have been found to provide a sufficient basis for calculating a fee award," and then reviewing examples of allegedly "block-billed" time entries and finding them compensable).

### B.  To reflect the marketplace, a modest lodestar enhancement is appropriate.

In a fee-shifting case, the Court may award a multiplier based on factors relevant to the case which are not subsumed within the initial lodestar calculation.  *Morales v. City of San Rafael*, 96 F.3d at 363-64, nn. 8 & 9. Here, relator's counsel are seeking a modest 1.1 multiplier (or 10%) enhancement, based on the following factors:

<u>Unanticipated delay in payment</u>.  It is well-established that an award of fees may be adjusted to account for delay in payment.  This is typically accomplished by allowing counsel to charge at current rates, as is being done here.  *Missouri v. Jenkins,* 491 U.S. 274, 283, 109 S. Ct. 2463 (1989).  An *additional* enhancement is permitted where an attorney assumes the costs of

litigation up front in "the face of unanticipated delay." *See Perdue v. Kenny A.*, 559 U.S. 542, 556, 130 S. Ct. 1662 (2010). The settlement amounts in this case will be paid out over a five-year time period until June 2025. Scott Decl. at ¶¶ 19-20. Accordingly, payment will be substantially delayed, and there remains a risk that Defendants will never pay these amounts. These factors thus justify an enhancement of the lodestar amount.

In addition, Defendants' intransigence in taking responsibility for their obligation to pay fees as agreed in December 2020 and their refusal to respond to discovery or even to make an offer to settle the fees until October 2021 has delayed payment yet further. *Cf. Finkelstein v. Bergna*, 804 F. Supp. 1235, 1239-40 (N.D. Cal. 1992) (the payment of interest to counsel when payment delayed after case resolution merely compensatory and "is in no sense a windfall").

Change in defendant's behavior. Here, as noted above, Defendants continue to do millions of dollars of business with the federal government pursuant to their nationwide GSA contract. The fact that relator's suit changed Defendants' faulty pricing practices on a going forward basis is thus resulting in additional monetary benefit to the governments beyond that reflected in the settlement amount. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1033 (9th Cir. 2012) ("success" of the case includes fact that litigation resulted in defendant changing challenged practices); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07–05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) (fact that lawsuit caused defendant to change practices nationwide one factor in awarding 5.5 multiplier).

Contingent risk. *See Ketchum v Moses* (2001) 24 C4th 1122 (risk enhancement appropriate in contingent fee cases because "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases."). This factor, which may be considered under California law, further supports a lodestar enhancement. *See also* Havian Decl. at ¶ 12.

Deterrent effect. As noted above, in announcing this settlement, multiple high level federal and state government officials emphasized that the case should serve as a warning to other contractors that the Government will not tolerate pricing fraud. *See* Scott Decl. at ¶¶ 21-

24

22, Exs. A & B (press releases). The case thus had an important deterrent effect, another factor in determining whether to add a multiplier to the lodestar. *Chabner v. United of Omaha Life Ins. Co.*, No. C-95–0447 MHP, 1999 WL 33227443 at *6 (N.D. Cal. Oct. 12, 1999) (deterrent effect cited as one factor in awarding 2.0 multiplier); *Edgerton v. State Personnel Board*, 83 Cal.App.4th 1350, 1363 (2000) (affirming 1.5 multiplier based in part on importance of privacy rights vindicated and deterrent effect decision will have on others).

     **C. Relator's counsel is entitled to "fees on fees."**

     It is well-established that prevailing counsel may recover for their time spent on their application for fees. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992) (Ninth Circuit "has repeatedly held that time spent by counsel in establishing the right to a fee award is compensable") (citations omitted). Relator's counsel respectfully requests to submit a supplemental declaration or declarations evidencing their time spent litigating this fee application following their reply and any argument. *Davis v. Prison Health Servs.,* No. C 09–2629 SI, 2012 WL 4462520 at *16 (N.D. Cal. September 12, 2012) (in order granting fee award, court also ordered plaintiffs' counsel to submit within 14 days "a supplemental declaration detailing the time spent on the fee application, as well as any costs that are sought").

**IV.    CONCLUSION**

     Based on the foregoing, relator's counsel respectfully request that the Court hold the lodestar to be $408,785 as of October 14, 2021 plus $444 in costs, Scott Decl. at ¶¶ 41-42 (totaling fees for Mr. Scott and Ms. Remick and itemizing costs), with the fees enhanced by a multiplier of 1.1, and subject to supplementation for time spent by relator's counsel on this motion, the reply and argument.

Dated: November 1, 2021         Respectfully submitted,

                     LAW OFFICES OF PAUL D. SCOTT, P.C.

                     By:_____

                         Paul D. Scott
                         Lani Anne Remick

                     Attorneys for *Qui Tam* Plaintiff
                     Michael Franchek

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts

**CERTIFICATE OF SERVICE**

I, Paul D. Scott, declare that a copy of the attached pleading and accompanying declarations and proposed order were served electronically on all parties listed with the Court for electronic service through the Court's ECF filing system on this day. I declare under penalty of perjury according to the laws of California and the United States, that the above is true and correct.

Dated: November 1, 2021

_____
Paul D. Scott

Motion for Attorneys' Fees, Expenses and Costs Under Federal and California False Claims Acts