Paul D. Scott, Esq. (SBN 145975)
pdscott@lopds.com
Lani Anne Remick, Esq. (SBN 189889)
laremick@lopds.com
LAW OFFICES OF PAUL D. SCOTT, P.C.
435 Pacific Avenue, Suite 200
San Francisco, California 94133
Tel: (415) 981-1212
Fax: (415) 981-1215

Attorneys for Relator Michael Franchek

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES *ex rel.* MICHAEL FRANCHEK and STATE OF CALIFORNIA, *et al. ex rel.* MICHAEL FRANCHEK, <br><br> Plaintiffs, <br><br> v. <br><br> WORKRITE ERGONOMICS, LLC and KNAPE & VOGT MANUFACTURING COMPANY, <br><br> Defendants. <br> _____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

No.  4:16-cv-02789-JSW

**DECLARATION OF PAUL D. SCOTT IN SUPPORT OF MOTION FOR  AWARD OF ATTORNEYS' FEES UNDER THE FEDERAL AND CALIFORNIA FALSE CLAIMS ACTS**

Hearing Date:  January 21, 2022
Time:            9:00 a.m.

I, Paul D. Scott, declare:

1.       I make this declaration of my own personal knowledge, except where stated on information and belief, and if called to testify in Court on these matters, I could do so competently.

2.       I am an attorney duly licensed by the State of California, and my firm the Law Offices of Paul D. Scott, P.C., is counsel for relator Michael Franchek in this matter.  I provide

1

this declaration in support of Relator's Motion for Award of Attorneys' Fees under the Federal and California False Claims Acts.

Professional Background

3.      I received my law degree from Yale Law School in 1989 and my undergraduate degree from the University of California at Berkeley with highest honors in 1986.

4.      Immediately after law school, I joined the Civil Fraud Section of the Civil Division of the United States Department of Justice in Washington, D.C. through the Honors Program.  I worked in the Civil Fraud Section for six years, with a detail during that same period to the Civil Appellate Staff of the Civil Division.  During my tenure in the Civil Fraud Section, I handled a wide variety of cases involving government contracting, particularly cases under the False Claim Act involving fraud against the Government.  While working with the Civil Appellate Staff, I briefed matters before the U.S. Courts of Appeal and U.S. Supreme Court and argued matters before numerous federal courts of appeal.

5.      In recognition of the quality of my work at the Department of Justice, I was given a letter of commendation from Attorney General Janet Reno, a Special Achievement Award, and an award from the Department of Veterans Affairs for the highest loan guarantee civil fraud recovery in the history of the agency.  I also served as an instructor and lecturer at seminars for investigative agents and other Government attorneys.

6.      After leaving the Department of Justice in 1995, I initially took a position working of counsel to California State Senator Quentin L. Kopp's private law firm in San Francisco, while simultaneously starting my own whistleblower law practice.

7.      For over twenty-five years, my firm has been handling numerous whistleblower fraud claims in state and federal court, leading to tens of millions of dollars in recoveries on behalf of the United States and the State of California.

8.      Of recent note, I was lead counsel in the successful False Claims Act whistleblower action against Lance Armstrong and others involved with the U.S. Postal Service Cycling Team for concealing doping while collecting sponsorship funds from the Postal Service.

Declaration of Paul D. Scott in Support of Motion for Award of Attorneys' Fees under the Federal and California False Claims Acts

The case resulted in millions of dollars being returned to U.S. taxpayers.   Opposing counsel in that matter was Keker, Van Nest & Peters, LLP.

9.      In the Northern District of California in particular, I was lead counsel in *U.S. ex rel. Brown v. APL, Maersk, et al.*, No. C 04-4424 MEJ, a *qui tam* action against two major shipping firms that lead to a combined recovery of over $58 million by the United States.

10.      Also in Northern California, our firm litigated a *qui tam* action against Iron Mountain, alleging, as in this case, false claims against the General Services Administration and related programs.  That case resulted in a $44.5 million settlement in favor of the government.

11.      I am a published author of numerous articles relating to Government whistleblower programs and a frequent lecturer to other attorneys on behalf of organizations such as Taxpayers Against Fraud ("TAF") and the American Bar Association.  I am involved with the governance of TAF and its policy initiatives, and I have aided the organization through work on amicus briefs they have filed with federal courts of appeal.

12.      In addition to providing continuing legal education to attorneys, I have also taught classes on the False Claims Act as a guest lecturer at the U.C. Berkeley School of Law and the New York University School of Law.

13.      In light of my background in government and policy work, I am frequently consulted by U.S. senate staffers and executive agency personnel regarding enhancement of government whistleblower programs and anti-fraud initiatives.

14.      The courts in which I have been admitted to practice include the following: United States Supreme Court (1995), United States Court of Appeal for the District of Columbia (1992), United States Court of Appeal for the First Circuit (1994), United States Court of Appeal for the Fifth Circuit (1994), United States Court of Appeal for the Ninth Circuit (1994), United States Court of Appeal for the Tenth Circuit (1994), United States Claims Court (1990), United States District Court for the Northern District of California (1997), United States District Court for the Eastern District of California (1999), United States District Court for the Central District of California (1997), and the California Supreme Court (1989).

Declaration of Paul D. Scott in Support of Motion for Award of Attorneys' Fees under the Federal and California False Claims Acts

Summary of Events in this Case

15.     After relator filed his complaint, the U.S. Department of Justice and California Department of Justice, along with other federal agencies, began investigating relator's complaint and written disclosure of evidence, coming to relator and relator's counsel in the first instance to advance the case.

16.     The investigation included a day-long interview of the relator on September 19, 2016, attended by multiple government counsel as well as investigators from several federal agencies.

17.     Subsequent to the interview, relator and his counsel were asked to provide additional documentation, which relator provided with the assistance of counsel. In addition, Relator's counsel was asked to assist the government with drafting a subpoena. Relator's counsel thereafter provided a detailed draft to the U.S. Attorney's Office, and a subpoena was subsequently issued to the Defendants. Government attorneys also interviewed at least one central witness identified by relator in his Disclosure Statement, using the information provided by relator, and engaged in follow on discussions with relator's counsel regarding the same.

18.     The government confirmed relator's allegations of improper pricing and developed a damage estimate based on the discounts that should have been provided to the government under the contract provisions set forth in relator's complaint. After a lengthy period of document production, lengthy settlement discussions began, during which government counsel continued to consult with and take input from relator's counsel.

19.     After receipt of financial information from Defendants, detailed financial analysis of the same, additional input from relator, and additional negotiations amongst the parties, the federal government intervened and the case was settled on or about December 1, 2020, for the sum of $7.1 million plus 2% interest over five years. The last scheduled payment under the federal settlement is in March 2025.

20.     The state subsequently intervened and settled the claims under the California False Claim Act on or about January 13, 2021, for the payment of $487,634.24 plus 2% interest

Declaration of Paul D. Scott in Support of Motion for Award of Attorneys' Fees under the Federal and California False Claims Acts

over five and a half years, again with input and participation by relator's counsel.  The last scheduled payment under the state settlement is in June 2025.

21.    A true and correct copy of the United States Department of Justice press release regarding the settlement, dated December 3, 2020, is attached hereto as **Exhibit A**.

22.    A true and correct copy of the California Attorney General's Office press release dated is attached hereto as **Exhibit B**.

23.    A true and correct copy of a webpage from the United States Department of State, Office of Inspector General, as it currently appears as of October 31, 2021, noting that the Workrite settlement was reported in the Department's Semiannual Report to the Congress, is attached as **Exhibit C**.

24.    A true and correct copy of the United States General Service Administration, Office of Inspector General, Semi-Annual Report to Congress is attached as **Exhibit D**.

25.    Both settlements explicitly acknowledged that relator is entitled to collect his reasonable expenses, including attorneys' fees and costs, on both intervened and non-intervened claims, pursuant to 31 U.S.C. § 3730(d) (False Claims Act) and Cal. Gov't Code § 12652(g) (California False Claims Act).

26.    Specifically, the federal agreement stated, in relevant part (emphasis added):

[T]his Agreement expressly does not dismiss or release: (a) Relator's claim under 31 U.S.C. § 3730(d) for reasonable expenses relating to the Civil Action, including Relator's and/or Relator's counsel's claims to reasonable attorneys' fees and costs, which claim will be addressed separately by Relator, Relator's counsel, and Defendants; or (b) any and all claims of Relator or Relator's counsel under the California False Claims Act pertaining to the State of California or any of its political subdivisions, including but not limited to Relator's claims under California Government Code § 12652(g) for a share of the proceeds and for Relator's reasonable expenses, attorneys' fees and costs.

     As a further condition for Relator's agreement herein, including dismissal of the Civil Action, *Defendants agree that Relator and his attorneys are entitled to reasonable expenses, attorney's fees and costs pursuant to 31 U.S.C. § 3730(d) for intervened and non-intervened claims.* Defendants and Relator agree that the United States District Court shall have continuing jurisdiction to issue orders with regard to any disputes over the amounts for expenses, attorney's fees and costs, and Relator will have a period of 120 days from the entry of final judgment on all claims in the Civil Action (including any claims under the California False Claims Act, Cal. Gov't Code, §§ 12650, et seq.), to file a motion under 31 U.S.C. § 3730(d) seeking attorneys' fees and costs from Defendants.

Declaration of Paul D. Scott in Support of Motion for Award of Attorneys' Fees under the Federal and California False Claims Acts

27.     Similarly, the state agreement stated, in relevant part (emphasis added):

[N]othing in this Agreement shall be deemed to release Relator's claims on behalf of himself and the United States under the federal False Claims Act, which have been resolved via a separate agreement previously executed, nor be deemed to preclude Relator from seeking to recover for any claims based on an alleged breach of this Agreement, or to release any claims under the California False Claims Act for his reasonable expenses, including attorney's fees and costs, from Defendants.

As a further condition for Relator's agreement herein, including dismissal of the Action, *Defendants agree that Relator and his attorneys are entitled to reasonable expenses, attorney's fees and costs pursuant to the California False Claims Act for intervened and non-intervened claims.*

Billing Rates

28.     My firm handles cases on a contingency basis.  When we recover fees under the Federal False Claims Act or the California False Claims Act, we have historically pegged our rates to the LSI Adjusted Laffey Matrix, which was endorsed by the D.C. Circuit in *Salazar v. District of Columbia*, 809 F.3d 58, 64-65 (D.C. Cir. 2015).

29.     As I have over 30 years experience as a litigator, the applicable hourly rate for my services under the LSI Adjusted Laffey Matrix is $919 per hour, plus an additional locality pay adjustment in light of the case being filed in San Francisco.

30.     A true and correct copy of the LSI "Adjusted Laffey Matrix" as it is updated online, including an explanation for how it is calculated, is attached hereto as **Exhibit E**. Available at http://www.laffeymatrix.com/see.html; also available at https://static1.squarespace.com/static/5a2af8a0f14aa1cbbcf14079/t/611569150fe2541ddc440aaf/1628793109802/Laffey+Matrix+Updated+Using+Legal+Services+Index+%2800042285-11xC4E0D%29.PDF.

31.     The locality pay differential between Washington D.C. and San Francisco is about 9.2%.  *See* **Exhibit F,** Locality Pay Tables for Geographic Areas published by Office of Personnel Management, Reflecting Locality Pay Differential between Washington, D.C. and San Francisco Bay Area. (130.48/141.44 = .92), available at https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/pdf/2021/saltbl.pdf.  The locality pay

Declaration of Paul D. Scott in Support of Motion for Award of Attorneys' Fees under the Federal and California False Claims Acts

adjustment would thus bring the applicable hourly rate under the LSI Adjusted Laffey Matrix to $998 (919/998 = .92).

32.    As a lawyer in the Northern District of California handling False Claims Act cases for many years, I am aware that other San Francisco firms in the District handling *qui tam* False Claims Act cases (in addition to other complex civil litigation) include:  Constantine Cannon, LLP, Farella, Braun + Martel, LLP, Gutride, Safier, LLP, Cotchett, Pitre & McCarthy, LLP, and Lieff Cabraser Heimann & Bernstein, LLP.

33.    One of the cases in which Gutride, Safier, LLP ("GSLLP") was awarded fees in this District, as cited in the Memorandum of Points and Authorities in support of this application, is *Carlotti v. ASUS Comput. Int'l*, Case No. 18-cv-03369-DMR, 2020 WL 3414653 at ** 5-6, 7 (N.D. Cal. Jun. 22, 2020).  In support of its decision, the court cited and relied on "Docket No. 61, First Declaration of Adam Gutride ("First Gutride Decl.")." *See id.* at *5.  A true and correct copy of the First Gutride Declaration, as downloaded from the Court's ECF filing system, is attached hereto as **Exhibit G**.  As relevant here, the First Gutride Declaration shows that the following 2019 rates were approved:  $1,025 per hour for a 1994 graduate from Yale Law School; $1,025 per hour for a 1998 graduate from Harvard Law School; $950 for a 2008 graduate of New York University Law School.  *Id.* at ¶ 23, 27.

34.    One of the cases in which Lieff Cabraser Heimann & Bernstein, LLP ("LCHB") was recently awarded fees in this District, as cited in the Memorandum of Points and Authorities in support of this application, is *In re Wells Fargo & Company Shareholder Derivative Litigation*, 445 F.Supp.3d 508 (N.D. Cal. 2020).  In that case, the Court approved 2019 billing rates for LCHB attorneys of up to $1075 per hour.  *Id.* at 527 n.10 (overruling all objections to rates other than those for "contract" attorneys).  A true and correct copy of LCBH's declaration in support of its fees motion at ECF 278-7, as downloaded from the Court's ECF filing system, is attached hereto as **Exhibit H**.  The declaration shows that 2019 hourly rates approved by the Court for LCBH attorneys included the following:  $1075 for a 1972 graduate of Georgetown University Law School, $950 for a 1988 graduate of University of California, Hastings School of

Law, $900 for a 1993 graduate of University of California, Berkeley, School of Law, and $850 for a 1984 graduate of Harvard Law School.  *Id.*

35.     One of the cases in which Cotchett, Pitre & McCarthy, LLP ("Cotchett") was awarded fees in this District, as cited in the Memorandum of Points and Authorities in support of this application, is *Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203, 1211 (N.D. Cal. 2010). The Court relied in part on the Pitre Declaration.  A true and correct copy of the Pitre Declaration, as downloaded from the Court's ECF filing system, is attached hereto as **Exhibit I**. The declaration shows that <u>2010</u> hourly rates approved by the court for Cotchett attorneys included:   $900 for a 1964 graduate of Hastings College of Law at the University of California, $775 for a graduate of University of San Francisco Law School, and $700 for a 1986 graduate of Boalt Hall School of Law.

        Time and Expenses

36.     A true copy of my firm's itemization of legal services rendered and expenses incurred is attached hereto as **Exhibit J** and is incorporated herein by reference.  The itemization was compiled during the regular course of my law practice.  To the extent that the material includes attorney-client or work-product information, such protections are not waived.

37.     As described in the attached itemization, my work and the work of attorney Lani Remick on this case has included, *inter alia*, the following:

-   numerous interviews of the relator regarding allegations in case

-   review of extensive documentary evidence compiled by relator regarding the allegations in the case

-   additional gathering of evidence in support of the relator's allegations, *i.e.,* factual research, including evidence of estimated damages

-   research regarding Defendants and the legal issues underlying the allegations regarding the Defendants

-   meeting with government counsel and investigators to discuss the case and the allegations of the relator

-   drafting and editing of the complaint in the case

Declaration of Paul D. Scott in Support of Motion for Award of Attorneys' Fees under the Federal and California False Claims Acts

- drafting and editing the relator's disclosure statement to the United States Department of Justice and the California Attorney General's Office
- preparing relator for a relator's interview with the United States and the State of California
- representing relator at an all-day interview by federal and state officials, including counsel with the U.S. Department of Justice, the U.S. Attorney's Office for the Northern District of California, the Office of Inspector General for the General Services Administration, and the California State Attorney General's Office, along with special agents from the Department of Veteran's Affairs, the General Services Administration and the Defense Criminal Investigative Service, plus at least five auditors from the Defense Contract Audit Agency and the General Services Administration
- numerous written and telephonic communications with Government counsel regarding the investigation, the calculation of damages, settlement strategy, and legal arguments made by Defendants' counsel, as well as factual arguments regarding ability to pay
- multiple additional communications with government counsel regarding procedural matters, such as extensions, partially unsealing the complaint, and intervention in the case
- review and editing of the federal settlement agreement in the case and communications with federal counsel re the same
- review and editing of the state settlement agreement in the case and communications with state counsel re the same
- communications with defense counsel relating to the settlement agreements and dismisal
- reviewing and editing the stipulations for dismissal and accompanying orders
- making efforts at resolving the attorneys' fee issue on a negotiated basis
- discovery of Defendants to determine their basis for objections to relator's fees and to learn their own attorneys' fees rates
- review of Defendants' objections to relator's attorneys' fees
- meeting and conferring with defense counsel in an effort to resolve discovery disputes and the motion for attorneys' fees

Declaration of Paul D. Scott in Support of Motion for Award of Attorneys' Fees under the Federal and California False Claims Acts

- preliminary work on the instant fee application

38. All of the foregoing work was reasonably necessary to accomplish the litigation objectives of this case, and the attached time records accurately reflect the work that was performed.

39. I have also exercised conservative "billing judgment" in this matter, by not seeking reimbursement in this request for: 1) work that was potentially excessive, redundant or unnecessary, 2) certain additional time entries to which Defendants objected in their discovery responses; 3) communications with the press, and 4) numerous additional hours of work on the case that Lani Remick and I simply have not recorded. I estimate that this exercise of "billing judgment" has resulted in the attached time entries reflecting at least 10% less time than was actually expended on this matter by myself and Lani Remick through the date specified in the slip listing.

40. In addition, my firm is not seeking reimbursement in this request for time spent on this matter by staff at my firm other than myself and Lani Remick.

41. My law office's claimed time spent on this matter through October 14, 2021 after the foregoing deductions and as reflected in **Exhibit J** is as follows:

LAR - 212.9 hours * $850 = $180,965.00

PDS - 247.9 hours * $919 = $227,820.10

Total claimed as of October 14, 2021 = $408,785.10

42. As described in the attached itemization, the costs and expenses incurred on this case have included, *inter alia*, the following: One $400 court filing fee and one $44 postage charge for service of the complaint and disclosure documents.

43. All of the foregoing costs and expenses as reflected in **Exhibit J** were actually incurred and were reasonably necessary to accomplish the litigation objectives of this case.

Attempts at Resolution

44. In my experience, the vast majority of fees claims in False Claims Act cases are settled as part of the main case or immediately thereafter. My firm has settled its claim to fees in every False Claims Act case we have handled prior to this one.

Declaration of Paul D. Scott in Support of Motion for Award of Attorneys' Fees under the Federal and California False Claims Acts

45.     As lead counsel for the relator in this action, I have met and conferred with defense counsel and have made good faith efforts to settle the claims to attorneys' fees in this action, so as to avoid further expenditure of time and resources on this case.

46.     Prior to the resolution of the federal and state cases on their merits, I provided partially redacted time records to Defendants' counsel on October 16, 2020 for purposes of potentially resolving the attorneys' fees claim as part of the main settlements in the case. Defendants, however, declined to make an offer in settlement of the attorneys' fees claim as part of the resolution of the main case.

47.     Following the settlements, Defendants substituted in new counsel paid for by their insurance carrier, per opposing counsel.

48.     On May 17, 2021, relator's counsel produced updated and unredacted copies of their detailed time and expense records to Defendants' new counsel for purposes of facilitating a possible settlement, but once again Defendants initially declined to extend an offer in settlement.

49.     Defendants also did not identify any criticism of the billings provided by relators, other than to state generally that Defendants believed the fees sought were disproportionate to the role of relator's counsel in the litigation.

50.     Relator's counsel subsequently prepared limited written discovery requests in an effort to learn the basis, if any, for Defendants' position.  Relator's discovery was served on or about June 9, 2021.  In their initial responses served on or about July 8, 2021, Defendants refused to provide any substantive responses to the discovery, instead repeatedly asserting largely the same objections to each of relator's requests.

51.     After meeting and conferring with Defendants unsuccessfully, relator's counsel thereafter sought assistance from the Court, which referred the matter to Magistrate Kim, who subsequently ordered Defendants to provide responses to relator's interrogatories seeking the basis for Defendants' objections to relator's fees claim.  *See* ECF No. 43, August 12, 2021 Order.

11

Declaration of Paul D. Scott in Support of Motion for Award of Attorneys' Fees under the Federal and California False Claims Acts

52.    A true and correct copy of Defendants' supplementary interrogatory responses to Interrogatories Nos. 1-3, which were served on or about September 9, 2021, are attached hereto as **Exhibit K**.

53.    Upon a review of the responses, which proposed that relator's counsel be paid at rates dramatically lower than market rates, relator returned to the Court again, seeking an order compelling Defendants to produce, *inter alia*, additional information regarding the rates that Defendants paid their own counsel in this case, which Magistrate Kim then ordered Defendants to produce as well.  *See* ECF No. 47, September 29, 2021 Order.

54.    A true and correct copy of Defendants' October 14, 2021 second supplemental interrogatory responses to Interrogatories Nos. 4-6, prepared pursuant to Judge Kim's September 29 Order, are attached hereto as **Exhibit L**.

55.    Notwithstanding the Court's order, notably missing from the information Defendants produced in their Second Supplemental Responses was the current (2021) rate information for their former lead counsel during the main portion of the case Matthew Haws of Jenner & Block. Relator's counsel repeatedly requested the information but current counsel for Defendants have represented that they have not been able to get the information from Defendants' former counsel.  Current counsel for Defendants suggested that perhaps Defendants' former counsel would produce the information if the parties entered into a protective order, but relator's counsel declined that approach on the basis that a protective order was not justified for the information being sought, and it would be an inefficient use of the Court and the parties' time to negotiate, prepare and enter into such an order for the discrete purpose of obtaining the current rate of Defendants' former lead counsel.  Accordingly, at present, relator's counsel are only in possession of the billing rates of Defendants' former lead counsel through some point in 2020.

56.    On or about October 1, 2021, *i.e.,* after two motions to compel had been filed and granted, and prior to the time that they had provided their second supplemental responses to relator's discovery as ordered by the Court, Defendants made their first settlement offer in the form of an offer of judgment.  On October 14, 2021, they produced the above-referenced second supplemental responses to relator's discovery.  On October 18, 2021 and October 21, 2021,

12

Declaration of Paul D. Scott in Support of Motion for Award of Attorneys' Fees under the Federal and California False Claims Acts

relator's counsel communicated to defense counsel about meeting and conferring regarding the fees claim. On October 27, 2021, the parties met and conferred regarding the fees claim. Relator made a counteroffer, but the parties remained far apart and were unable to reach a settlement of the claim.

Additional Evidence in Support of Relator's Motion for Fees

57.     True and correct copies of web pages, as they currently appear as of October 31, 2021 on the private equity firm Wind Point Partners' website, regarding the firm and its acquisition of Knape & Vogt, are attached hereto as **Exhibits  M and N**, available at https://www.wppartners.com/portfolio/knape---vogt and https://www.wppartners.com/overview/who-we-are.

58.     A true and correct copy of a Corporate Fact Sheet, as it currently appears as of October 31, 2021 on defendant Knape & Vogt's website is attached as **Exhibit O**, available at https://www.knapeandvogt.com/sites/default/files/Company-Fact-Sheet-0516.pdf

59.     A true and correct copy of the firm biography for attorney Matthew Haws of Jenner & Block, as it currently appears on his firm's website as of October 31, 2021, is attached as **Exhibit P**, available at https://jenner.com/people/MatthewHaws.

60.     A true and correct copy of the firm biography for attorney Satenik Harutyunyan of Jenner & Block, as it currently appears on the firm's website as of October 31, 2021, is attached as **Exhibit Q,** available at https://jenner.com/people/SatiHarutyunyan.

61.     A true and correct copy of a blogpost dated September 30, 2021 from the Jenner & Block website that mentions Senior Paralegal Cheryl Olson is attached hereto as **Exhibit R,** available at https://jenner.com/library/news/21310.

62.     A true and correct copy of a Jenner & Block press release dated May 18, 2016 that mentions Senior Litigation Specialist Bryan Power is attached hereto as **Exhibit S**, available at https://jenner.com/library/press_releases/15186.

63.     A true and correct copy of a screenshot of a report from the General Services Administration (GSA) "Schedule Sales Query Plus," website at https://d2d.gsa.gov/report/fas-schedule-sales-query-plus-ssq, is attached as **Exhibit T**.  The report was generated by using the

13

SSQ+ Report Builder tool and inputting the relevant date range (i.e., November 7, 2017, the day after the last day of the Covered Conduct under the federal Settlement Agreement through October 31, 2021) and GSA contract number (GS-28F-0030S), and then selecting for display the fields for contractor, contractor city/state, and contract. As the screenshot of the resulting report shows, Workrite's reported GSA sales under contract GS-28F-0030S for the stated period were $6,815,517.

64.    A true and correct copy of the unpublished opinion in *United States ex rel. Savage v. Washington Closure Hanford, LLC*, No. 2:10-cv-05051 (E.D. Wash. August 27, 2019) is attached hereto as **Exhibit U**.


I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.


DATED:  November 1, 2021                              _____

                                                                            Paul D. Scott, Esq.

14

Declaration of Paul D. Scott in Support of Motion for Award of Attorneys' Fees under the Federal and California False Claims Acts